IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-25-FL

| | | |
|---|---|---|
| ROBERT MCGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LORD CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 15). Plaintiff has responded in opposition and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiff initiated this action in Wake County Superior Court, on December 27, 2018, asserting claims of discrimination and retaliatory discharge against defendant, his alleged former employer, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff seeks compensatory damages, including lost wages, as well as punitive damages, injunctive relief, attorney's fees, and interest.

Defendant removed to this court on January 24, 2019, and filed the instant motion to dismiss on March 14, 2019. In support of dismissal, defendant relies upon a declaration of Gareth McAllister ("McAllister"), President, Asia Pacific, of defendant, attaching an Agreement for Separation between plaintiff and Lord Japan, Inc. (hereinafter, the "Separation Agreement"). In

opposition, plaintiff relies upon a screenshot of defendant's web site. Defendant replied in support of the motion on May 3, 2019.

## STATEMENT OF ALLEGED FACTS

The facts alleged in the complaint as pertinent to the instant motion, may be summarized as follows.

Plaintiff is a resident of Minnesota, and defendant is a Pennsylvania corporation with principal office in North Carolina. Defendant hired plaintiff on October 4, 2013, for the position of "Regional Director, Japan." (Compl. ¶ 11). During his time of employment plaintiff "received multiple performance-related recognitions and accolades, including being awarded the second highest 'spot bonus' in the company and receiving a personal note of appreciation from [defendant's] CEO in 2017." (Compl. ¶ 14).

According to the complaint, in 2016, plaintiff heard "rumors that a colleague, Zhong Bei ('Ms. Bei') did not like him and was spreading false information," including a "complaint against him for sexual harassment in an attempt to get him fired." (Id. ¶¶ 16-17). In fact, according to the complaint, plaintiff was subject to sexual harassment from Ms. Bei, who made "sexually suggestive comments whenever she spoke with [plaintiff]," tried to "touch and flirt with him at company events," giving plaintiff reason to believe she "was attempting to entrap him in a compromising situation and then claim he sexually harassed her." (Id. ¶¶ 19, 21). After she "began touching him and hanging on to him" at a work event in April 2017, plaintiff demanded that she stop. (Id. ¶ 28). According to the complaint, she exposed herself to plaintiff at a work event in September 2017. (Id. ¶ 37).

On September 15, 2017, plaintiff met with defendant's manager of human resources in Japan, to discuss the details "of the humiliating situation" "regarding Ms. Bei's offensive and inappropriate

2

conduct." (Id. ¶ 39-40). It was this manager's duty "to report this sexual harassment incident up the chain of command." (Id. ¶ 41). "Less than two months later, on November 13, 2017, [plaintiff] received notice that [defendant] was terminating his employment." (Id. ¶ 42).

According to the complaint, although defendant "ostensibly terminated [plaintiff] for failing to succeed in his role," defendant in fact terminated plaintiff "in retaliation for opposing Ms. Bei's offensive workplace conduct and for making a claim to HR, or in the alternative, [plaintiff's] sexual harassment claim against Ms. Bei was a substantial factor in [defendant's] decision to terminate [plaintiff's] employment." (Id. ¶ 44). Plaintiff also asserts in the complaint that he "was over 40 years of age at the time of his termination, was meeting [defendant's] legitimate performance expectations, and . . . was replaced by someone substantially younger." (Id. ¶ 45).

## DISCUSSION

A.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

3

B.  Analysis

1.  Consideration of Documents Outside Complaint

Defendant argues that plaintiff's claims under Title VII must be dismissed due to a release of all claims in the Separation Agreement. This raises a threshold issue whether and to what extent the court in this case can consider materials outside of the complaint in deciding the instant motion. Ordinarily, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(c). In that event, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

However, the court may consider documents "attached to the motion to dismiss, so long as those documents [are] integral to the complaint and are authentic" Mason v. Mach. Zone, Inc., 851 F.3d 315, 317 n.2 (4th Cir. 2017); see Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.") (quotations omitted).

Here, the Separation Agreement is integral to the complaint because it sets forth the terms of plaintiff's termination that forms the basis for claims of discrimination and retaliatory discharge. Plaintiff specifically alleges in the complaint that "on November 13, 2017, [plaintiff] received notice that Lord was terminating his employment." (Compl. ¶ 42). Plaintiff executed the Separation Agreement on November 13, 2017, and the Separation Agreement expressly memorializes that "[plaintiff] and the Company hereby agree that written notice of termination of employment has

been given as of November 13, 2017, and that the employment . . . shall be terminated as of February 13, 2018." (DE 17-1 at 2).[1]

The Separation Agreement is authenticated by the McAllister declaration. (See McAllister Decl. ¶ 3). Moreover, plaintiff does not dispute the authenticity of the Separation Agreement, which bears his signature and the signature of McAllister. (See DE 17-1 at 6). Accordingly, where the Separation Agreement is integral to the complaint and authentic, the court considers its contents in addressing the motion to dismiss.

By contrast, the court does not consider factual allegations in the McAllister declaration, as well as two additional factual allegations suggested by defendant in its briefs in support of the motion to dismiss. Specifically, the court does not consider defendant's assertion that plaintiff was employed solely "by LORD Japan, Inc., a subsidiary of Defendant, not by Defendant," for purposes of plaintiff's Title VII claims. (Def's Mem. (DE 16) at 4). The court also does not consider defendant's assertion that "Plaintiff accepted payments from Defendant in excess of $300,000.00 pursuant to the [Separation] Agreement and has made no attempt to return any portion of the consideration paid to him." (Id. at 5-6). The former unqualified assertion is contrary to the allegations in the complaint, and the latter assertion regarding transfer of funds and failure to return funds has no reference in the complaint.

In sum, the court will limit its analysis to the allegations in the complaint and the contents of the Separation Agreement.

---

[1] Page numbers in citations to documents referencing docket entry ("DE") numbers in the case file specify the page number designated by court's electronic case filing (ECF) system and not the page number, if any, stated on the face of the document (e.g., here "Page 1" on the face of the document corresponds page two of DE number 17-1).

2. Release in Separation Agreement

Defendant argues that plaintiff's claims are barred by the release in the Separation Agreement, which provides, in pertinent part:

> Article 5. FULL AND FINAL SETTLEMENT
>
> The Employee recognizes that the payments set out in Article 6 below exceed legal or contractual minimum requirements and therefore irrevocably and unconditionally releases and forever discharges the Company and its affiliates, including without limitation their directors, officers, executives, partners, stakeholders, agents, attorneys, insurers and employees, past and present, and each of them, from any and all claims in full and final settlement of any rights or obligations that may exist on the date hereof or at any time hereafter in connection with or arising out of the Employment Agreement and/or the termination thereof.

(Separation Agreement (DE 17-1) at 4). The Separation Agreement further provides:

> Article 6. COMPENSATION
>
> In consideration for the Employee's acceptance of the undertakings and obligations as stated in this Agreement for Separation and in full and final settlement of all of the Employee's rights and/or claims in connection the employment of Employee as well as the termination of employment with the Company set out in Articles 1 through 5, the Company agrees to pay the Employee the following sums, the timing and amount of which is set out below.

(Id. at 4-5). The Separation Agreement then lists five categories of severance pay, benefits, and incentives. (Id. at 5).

"[A]n employee may waive his cause of action under Title VII as part of a voluntary settlement." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974). "In determining the effectiveness of any such waiver, a court [must] determine at the outset that the employee's consent to the settlement was voluntary and knowing." Id. at 52, n. 15. "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by

6

the intent of the parties." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009) (quotations omitted).

In the absence of statutorily-mandated requirements for waiver of some types of federal claims, such as those under the Age Discrimination in Employment Act ("ADEA"), 29. U.S.C. § 626(f)(1), settlement releases are analyzed "under ordinary contract principles," based upon "the appropriate state's law for guidance." O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir.), superseded in part by statute, 29 U.S.C. § 626(f)(1); cf. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426–27 (1998) (analyzing requirements for waiver of ADEA claim under § 626(f)(1)); see also Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453, 457 (M.D.N.C. 2006) ("Unlike the release of a Title VII or other discrimination or wrongful discharge claim, the release of an age discrimination claim is held to more exacting standards.").

"A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised," and a "waiver is a voluntary and intentional relinquishment of a known right or benefit." Adder v. Holman & Moody, Inc., 288 N.C. 484, 492 (1975). "Whether [an] agreement be called a release, a waiver or be given some other designation . . . [it] is a contract and is therefore subject to the recognized rules of construction of contracts." Id.

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949). "Where the terms of the contract are not ambiguous, the

7

express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976); see also Goodman v. Resolution Tr. Corp., 7 F.3d 1123, 1126 (4th Cir. 1993) ("If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law.").

In this case, the Separation Agreement includes a plain and unambiguous release of "any and all claims in full and final settlement of any rights or obligations that may exist on the date hereof." (DE 17-1 at 4). It memorializes in plain terms compensation paid to plaintiff "in full and final settlement of all of the Employee's rights and/or claims in connection [sic] the employment of Employee as well as the termination of employment" set out in the Separation Agreement. (Id.). The release is not qualified in any way; it "irrevocably and unconditionally releases and forever discharges the Company[2] and its affiliates," which include defendant, from claims by plaintiff. (Id.).

On its face, the Separation Agreement is a knowing and voluntary release of all claims, including plaintiff's instant claims of discrimination and retaliatory discharge under Title VII. It states in its preamble that "the Company and the Employee have decided to enter into this Agreement for Separation in order to set forth the terms and conditions of the termination of the EMPLOYEE AGREEMENT by mutual consent," where the term "EMPLOYEE AGREEMENT" is defined as plaintiff's employment agreement with the Company that commenced October 4, 2013. (DE 17-1 at 2). Furthermore, plaintiff initialed each page of the Separation Agreement and signed it. (DE 17-1 at 2-7).

---

[2] The "Company" is defined as "LORD JAPAN INC." (DE 17-1 at 2).

Accordingly, enforcing the Separation Agreement according to its plain and unambiguous terms, where it includes a knowing and voluntary waiver and release, the instant claims by plaintiff against defendant are barred and must be dismissed as a matter of law.

Plaintiff challenges application of the Separation Agreement on several grounds that are unavailing. First, plaintiff argues that the Separation Agreement is not clear and unambiguous because the waiver contained within it does not "make[] it unmistakably clear that the discrimination statutes at issue are part of the agreement," and it does not include an "explicit incorporation of statutory antidiscrimination requirements," quoting requirements set forth in Carson v. Giant Food, Inc., 175 F.3d 325, 332 (4th Cir. 1999). Carson, however, concerned enforcement of a collective bargaining agreement to arbitrate claims, not an individual settlement release or waiver analyzed under ordinary contract principles. There, the court noted, "collective bargaining agreements to arbitrate [statutory discrimination] claims, unlike contracts executed by individuals, must be 'clear and unmistakable.'" Id. (quoting Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998)) (emphasis added). Thus, the standard set forth in Carson is inapposite.

Plaintiff also argues that the Separation Agreement "invokes Japanese choice of law, calling into question whether any alleged release by [plaintiff] could be considered 'knowing.'" (Pl's Opp. (DE 21) at 8). This argument misses the mark. As an initial matter, plaintiff does not demonstrate how invocation of Japanese choice of law alters the analysis of the Separation Agreement for purposes of the release of claims. It is true that the Separation Agreement states that "it shall be interpreted under the laws of Japan." (DE 17-1 at 6). However, "in absence of proof to the contrary, the presumption is that the law of [the foreign country] with regard to the right of recovery is the same as the Law of this country, the lex fori." Heredia v. Davies, 12 F.2d 500, 501 (4th Cir. 1926);

9

see Baker v. Booz Allen Hamilton, Inc., 358 F. App'x 476, 481 (4th Cir. 2009) (stating "the district court should apply the forum state's law" unless the party claiming foreign law applies carries the burden of "proving foreign law to enable the district court to apply it"). Here, plaintiff has offered no allegation or proof of any difference between Japanese law and the law of this forum on the question of enforcement of the Separation Agreement. Indeed, plaintiff cites and applies only United States law in opposing dismissal. Therefore plaintiff's reference to the Japanese choice of law provision in the Separation Agreement is immaterial.

Moreover, plaintiff's suggestion in his brief that Japanese choice of law calls into question the "knowing" nature of any release is a conclusory assertion devoid of any factual basis in the complaint or the Separation Agreement. Plaintiff suggests that he may wish to make allegations that the release in the Separation Agreement was not a knowing and voluntary release. The court does not speculate at this juncture what those allegations may be or whether they will be probative to the issue of a knowing and voluntary release. As set forth below, however, the court will provide plaintiff an opportunity to move for leave to amend the complaint, if he so desires.

Next, plaintiff argues that the waiver in the Separation Agreement is not valid because it does not include language that states "Nothing in this Agreement shall be construed to prohibit you from filing a charge with or participating in any investigation or proceeding conducted by the EEOC or a comparable state or local agency." (Pl's Opp. (DE 21) at 8). The language plaintiff quotes, however, is from a consent decree in a case brought by the EEOC in the United States District Court for the Western District of New York. (See id. (quoting EEOC v. Eastman Kodak Co., No. 06-CV-6489 (W.D.N.Y. Oct. 6, 2006)). It provides no authority on whether plaintiff's claims in the instant matter are barred by the Separation Agreement under applicable principles of contract law.

Finally, plaintiff suggests that the Separation Agreement is not knowing and voluntary because it did not advise nor allow plaintiff to seek legal counsel prior to signing. Whether there is advice or allowance to seek counsel, however, is a statutorily required consideration for determining enforceability of a waver of claims under the ADEA. See 29 U.S.C. § 626(f)(1). Plaintiff cites no authority for the proposition that advice or allowance to seek counsel is a required factor for determining enforceability of a waiver under state contract law principles. There is also no allegation in the complaint or information in the Separation Agreement suggesting that this was a factor in plaintiff's execution of the Separation Agreement in the instant case.

In sum, where the Separation Agreement is clear and unambiguous on its face, and there is no basis to infer it is unenforceable, the Separation Agreement bars plaintiff's claims as a matter of law. Therefore, plaintiff's claims are dismissed for failure to state a claim upon which relief can be granted.[3] Where dismissal is premised upon the Separation Agreement raised in defendant's motion to dismiss, and where it is not clear that "no amendment in the complaint could cure the defects in the plaintiff's case," then dismissal is without prejudice, with opportunity for plaintiff to seek leave to amend. Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 623 (4th Cir. 2015).

3. Request for Attorney's Fees and Costs

Defendant requests that plaintiff be ordered to pay its attorney's fees and costs associated with this action, pursuant to Federal Rule of Civil Procedure 54(d). As an initial matter, the motion

---

[3] The court rejects defendant's additional argument that dismissal is warranted as a matter of law because plaintiff has not named the correct defendant. While defendant asserts that only LORD Japan, Inc. is plaintiff's employer, those assertions are contrary to the allegations of the complaint. (See, e.g., Compl. ¶ 11 ("Defendant hired [plaintiff] on or around October 4, 2013 for the position of Regional Director, Japan.")). Therefore, this issue is not appropriate for resolution on a motion to dismiss. In any event, if plaintiff seeks to proceed with his claims, plaintiff will have an opportunity, if he wishes, to move to amend the complaint to address whether defendant should remain as currently specified or whether LORD Japan, Inc., should be named in addition or in place of defendant.

11

is premature because judgment has not entered in this case. In addition, the court finds that an award of fees and costs to defendant is not warranted under present circumstances. Plaintiff has not pursued frivolous, unreasonable, or groundless claims, or continued to litigate after his claims clearly became so. Accordingly, defendant's request for attorney's fees and costs is denied.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss. (DE 15). Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. Plaintiff may file a motion for leave to amend his complaint, accompanied by a memorandum in support and redline showing proposed changes, within 21 days of the date of this order. In the event plaintiff does not do so, without further order of the court, the clerk shall enter judgment in favor of defendant on the basis of this order, and close this case.

SO ORDERED, this the 30th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge